*In re* IRON BAY COMPANY, *Insolvent.*

Argued May 11, 1894. Affirmed May 25, 1894.

No. 8618.

**A contract construed.**

A certain contract construed.

Appeal by claimant, Howe Lumber Company, a corporation, from an order of the District Court of St. Louis County, *Charles L. Lewis,* J., made December 2, 1893, denying its motion for a new trial of its claim against the estate of Iron Bay Company, insolvent.

On April 2, 1892, the Iron Bay Company, a corporation, being insolvent made an assignment of its property to F. W. Paine under Laws 1881, ch. 148, as amended, in trust for the equal benefit of all its creditors who should present their claims and file releases. The Howe Lumber Company in due time presented to the assignee a claim as follows: It owned and operated a sawmill at Tower. The Iron Bay Company was engaged in the manufacture at West Duluth of band saws and accompanying machinery for equipping sawmills. On December 14, 1891, it wrote to the Howe Lumber Company the following proposal:

"We submit for your consideration proposition to furnish your company one right hand Iron Bay band mill, in place in your sawmill

in Tower, Minnesota, on or before January 15, 1892, ready to run. Said mill to be on trial for ninety days. If said band mill prove satisfactory your company to pay us for the same the sum of $1,000. If it proves unsatisfactory, we agree to take the band mill out within five days of the receipt of notice and to replace your mill in same condition as found by us. We further agree in such an event to pay you an indemnity of $1.60 per 1,000 feet of all lumber cut less than 50,000 feet per day between January 15, and February 1, 1892, provided the balance of your mill shall be in proper condition to run during the time, and you shall have furnished us a sufficient number of logs to make the necessary cut, viz. 50,000 feet per day."

The proposal was accepted and on January 25, 1892, the band-mill was in and ready to run. The claimant commenced on that day to operate it but it did not work satisfactorily and the insolvent was notified. It asked to have the time of trial extended ten days to readjust machinery and allow a fair trial of its merits, saying: "We agree to still continue the $1.60 per M." The claimant consented to the extension and finally on March 5, 1892, accepted the mill and agreed to pay the $1,000 less payments already made. The Howe Lumber Company on November 28, 1892, presented to Paine, assignee, the claim that the lumber cut by the mill from the time it started January 25, until it was accepted March 5, was but 454,052 feet, that in the intervening time it should have cut 50,000 feet each working day and asked to be allowed $1.60 per thousand feet on the deficiency. The assignee rejected the claim and the Howe Lumber Company appealed to the court where the assignee presented as a counterclaim the unpaid balance of the purchase price of the machinery, but on the trial withdrew it by permission of the court. This claim of the Howe Lumber Company was disallowed on the ground that by the terms of the proposal the claim could not accrue unless the mill proved unsatisfactory and was taken out. The claimant moved for a new trial, but was refused and it appeals.

*White & McKeon*, for appellant.

The controversy in the cause arises over the construction of the contract and certain extensions under which the insolvent furnished a band mill to claimant to be used in its saw mill at Tower. The principal error of the court was in assuming that the contingency

upon which defendant was to pay plaintiff an indemnity was, that it should take out its band mill, instead of, that its mill should prove unsatisfactory.

*Draper, Davis & Hollister,* for respondent.

The trial court could not upon the appeal render judgment in favor of the assignee of the insolvent company for any sum that might be due from the claimant. It nowhere appears in the record except in the memoranda of the court that the assignee ever asserted a counter claim.

The only difference between the parties is, the construction of the contract. There is no unqualified agreement to pay $1.60 per thousand feet for all lumber cut less than 50,000 feet per day between January 15, and February 1, or for any other time. The Iron Bay Company in "such an event" agrees to pay an indemnity. Now, to what do the words, "in such an event" refer? They must, we submit, refer to the event of the mill proving unsatisfactory and being rejected and taken out.

MITCHELL, J. This appeal involves merely the construction of a contract. The case turns upon the question, to what do the words "in such an event" (upon the happening of which the "indemnity clause" in the contract was to become operative) refer?

We agree with the trial court that they refer to what immediately precedes, to wit, the event of the band mill proving unsatisfactory, and the giving of such a notice of the fact by plaintiff as would require the defendant to take it out, and restore plaintiff's sawmill to its former condition; in other words, that the indemnity of $1.60 per M. was to be paid only in case, after full trial, the band mill proved unsatisfactory, and the plaintiff, for that reason, finally concluded not to take it, and notified defendant of that fact.

The promise of defendant, when asking for an extension of time, "to continue the $1.60 per M.," must be construed as meaning merely to continue that same agreement in case the mill finally proved unsatisfactory after the proposed changes. The promise to pay plaintiff the expense caused by its mill being shut down from February 8th to February 25th is not consistent with the idea that defendant was also to pay the indemnity of $1.60 per M. during the same time.

If plaintiff has any claim for damages for the loss of the use of the mill during the delay it must be for breach of the contract, and not under this indemnity clause.

There is nothing in the point that the court erred in allowing defendant to dismiss its counterclaim. The matter was within the discretion of the court. Furthermore, we fail to see how the plaintiff is at all prejudiced.

Order affirmed.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 346.)